***NOT FOR PUBLICATION***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                              )
**UNITED STATES OF AMERICA,**   )   Crim. No.: 09-748-01 (FLW)
                                              )
       **Plaintiff,**            )
                                              )
**v.**                                       )   **MEMORANDUM**
                                              )   **OPINION**
**JEFFREY MICHELSON,**          )
                                              )
       **Defendant.**           )
_____

**WOLFSON, United States District Judge:**

      On September 30, 2009, Defendant Jeffrey Michelson ("Defendant") waived prosecution by indictment and pled guilty to one charge of bank fraud in violation of 18 U.S.C. § 1344. The bank fraud scheme involved three aspects. The first involved Defendant's fraudulent procurement of a loan ("the Provident Bank loan") on behalf of Glikin Brothers ("Glikin") as its Chief Executive Officer ("CEO"). In his role as Glikin's CEO, Defendant fraudulently procured a $4.2 million dollar loan from the bank by inflating Glikin's assets and receivables, and he further converted some of the loan proceeds for his own personal use. The second aspect of the scheme involved check kiting. By altering checks from Glikin's vendors to inflate the amount of certain checks, Defendant fraudulently obtained $537,000 in deposits larger than that intended by the payors. Third, Defendant's bank fraud scheme involved the depositing of worthless checks at Commerce Bank and Provident Bank. Defendant would take advantage of the instant credits created by these deposits to issue payments to third parties that would ultimately be returned for insufficient funds once the worthless deposits were uncovered.

      Following Defendant's guilty plea, on February 15, 2011, the Court sentenced the Defendant

to forty-four months imprisonment. Presently before the Court is a petition for restitution in the amount of approximately $8,394,029.51 filed by Leslie Michelson and Randy Michelson ("Petitioners"), on behalf of themselves, their mother Eunice Michelson, and Randy's minor son (collectively, "the Michelson Family") pursuant to the Mandatory Victims Restitution Act of 1996 ("MVRA" or "the Act"), 18 U.S.C. § 3663A. The Michelson Family collectively constituted the owners of Glikin, which is now defunct. The United States of America ("the Government") partially supports the Petitioners request; in its view, Petitioners are entitled to a total of $535, 836.23 in restitution. At Defendant's sentencing hearing, the Court indicated that, in light of Petitioners' numerous restitution submissions, the Court would require additional time to make its finding as to the appropriate amount of restitution to the Petitioners.[1]

The Court held a lengthy restitution hearing on April 28, 2011. At the restitution hearing, Defendant agreed to pay, and the Court ordered that he would pay, $4,005,601.27 in restitution to Provident Bank for the losses it sustained as a victim of the fraud. The Court reserved on the question of what amount of restitution Defendant should pay to Petitioners for their own losses and on behalf of the Michelson family.

The Court has spent considerable time reviewing the Government's, the Petitioners', and Defendant's submissions, and engaged in an extensive discussion with the parties at the restitution hearing. At the outset, the Court notes that many of Petitioners' specific restitution requests involve detailed facts and are intertwined with similar issues raised in pending civil litigation. There is a

---

[1] 18 U.S.C. § 3664(d)(5) mandates that courts determine the amount of restitution within 90 days of the sentencing hearing. However, where, as here, the court indicates at the time of sentencing that additional time is required, the court may determine the amount of restitution at a later date. See Dolan v. U.S., 130 S.Ct. 2533 (2010).

2

pending probate action involving Defendant's disposition of certain life insurance proceeds belonging to Eunice Michelson. Defendant has brought several counterclaims against Petitioners in that probate action, although it is unclear from the record the scope of those counterclaims. In addition to the probate litigation, there is a suit between Provident Bank and Petitioners as guarantors of the Provident Bank loan. The legislative history of the MVRA makes clear that Congress intended for "restitution under the MVRA [to be] a form of criminal penalty rather than civil redress." U.S. v. Edwards, 162 F3.d 87, 91 (3d Cir. 1998). In Congress' view, "the administration of mandatory criminal restitution should not take on the procedural complications of civil proceedings ...." Id. Congress' admonition is particularly apt here where Petitioners are involved in multiple pending civil suits; such litigation is well suited for resolving the complex factual issues underlying Petitioners' restitution requests. For this Court to sort through Petitioners' numerous filings and determine the requisite amount of restitution on each of Petitioners' requests would transform the restitution process into another full-blown "civil suit" and contravene Congress' stated intent. Accordingly, the Court will exercise restraint and "streamline the administration of restitution" in this case. Id.

Having fully considered the Petitioners' many requests, and having heard from both the Government and the Defendant, the Court awards $535,836.23 in restitution to the Petitioners. The reasons underlying my decision are as follows:

1. On behalf of the Michelson Family, the sole shareholders of Glikin, Petitioners seek restitution for 24 claims relating to, inter alia, alleged thefts perpetrated by Defendant in preparation for and following acquisition of the bank loan, as well as funds expended by

3

Petitioners for the purported purpose of salvaging Glikin as an operating entity.[2] Defendant opposes any order of restitution to the Michelson Family on the basis that they do not qualify as "victims" under the MVRA.

2. As an initial matter, the Court concludes that Petitioners are "victims" under the MVRA. The term "victim" is defined by the MVRA as:

> [A] person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663(a)(2). "For scheme-based crimes such as wire fraud and mail fraud, the term 'victim' is broadly defined by the MVRA." U.S. v. Fallon, 470 F.3d 542, 548 (3d Cir. 2006). Hence, a person not named in the indictment may be a victim of a scheme-based fraud as long as that person was directly and proximately harmed by the offense of conviction. See id. In other words, a person may be a victim if his or her harm is "closely related" to the scheme. Id. (citing U.S. v. Kones, 77 F.3d 66, 70 (3d Cir. 1996)).[3] By way

---

[2] In this connection, the Court notes that it is the Government's burden to demonstrate by a preponderance of the evidence the amount of loss sustained by the victim. 18 U.S.C. § 3664(a), (e). However, the court "may consider affidavits and letters by the injured party[,] ... and may consider other hearsay evidence that bears minimal indicia of reliability so long as the defendant is given an opportunity to refute that evidence." U.S. v. Reese, 998 F.2d 1275, 1282 (5th Cir. 1993).

[3] While Kones interprets the Victim and Witness Protection Act ("VWPA"), which was partially superceded by the MVRA, its reasoning is authoritative on how to interpret "victim" in the MVRA. See U.S. v. Quillen, 335 F.3d 219, 222 n.4 (3d Cir. 2003); United States v. Akande, 200 F.3d 136, 140 (3d Cir. 1999) (noting that the definition of "victim" is "virtually identical" in the MVRA and VWPA, and looking to "case law that construes either section"). Courts have further held that cases construing the Crime Victims' Rights Act, 18 U.S.C. § 3771, are also authoritative. See U.S. v. Atlantic States Cast Iron Pipe Co., 612 F.Supp.2d 453, 462 (D.N.J. 2009) ("[B]ased on the text, origin, and limited legislative history of the CVRA . . . the definition of 'victim' under

4

  of example, in a mail fraud case involving a dentist-defendant's use of mails to submit falsified insurance claims, the Third Circuit held that a person claiming to be injured by the dentist's faulty medical services was not a "victim" while one who was harmed by the submission of the insurance claims would be. Kones, 77 F.3d at 71. "[V]ictim within the meaning of [the statute] does not include a person who has experienced no harm arising from the criminal conduct that gives rise to the offense of conviction." Id. (internal quotation marks omitted).

3. Defendant argues that Petitioners are not victims because his offense of conviction is bank fraud and the only victims of bank fraud are banks. See Restitution Hearing Transcript ("Tr.") 81-82 (contending that Petitioners are better viewed as victims of shareholder fraud which was not charged or pled to in this case). Defendant's argument contradicts the plain language of the MVRA. The Act defines "victim" as any "person directly and proximately harmed as a result of the commission of [the] offense ...." 18 U.S.C. § 3663(a)(2). Nothing in the language of the statute suggests that only the primary or intended victim of a given fraud is entitled to restitution. Moreover, the Third Circuit's decision in Kones makes clear that the touchstone of the victim analysis is to determine the offense of conviction and then query whether the person experienced harm "arising from the criminal conduct that gives rise to the offense of conviction." Kones, supra at 71. Accord U.S. v. Atlantic States Cast Iron Pipe Co., 612 F.Supp.2d 453, 536 (D.N.J. 2009). Utilizing this mode of analysis, courts have awarded restitution to non-bank persons and entities who were directly harmed by a

---

CVRA will be interpreted consistent with existing and evolving case law under the VWPA and MVRA.")

defendant's bank fraud.[4]  At least one court has awarded restitution to a defendant's employer for losses sustained from forged checks and fraudulent invoices prepared by the defendant without the employer's knowledge.  U.S. v. Hughes, 149 Fed.Appx. 692, 695 (9th Cir. 2005).  See also U.S. v. McPherson, No. 2:08–CR–162, 2010 WL 2505601 (S.D.Ohio Jan. 29, 2010) (awarding restitution to business partner of a defendant who committed bank fraud through jointly-owned business).  Likewise, here, I conclude that Petitioners are victims of Defendant's bank fraud to the extent they were directly and proximately harmed by the fraud.

4. Having concluded that Petitioners are victims, I now turn to the Government's requests for restitution.  The Government argues that Petitioners are entitled to restitution for three categories of harm. The first is for the amounts personally paid by Leslie and Randy Michelson on the Provident Bank loan once Glikin could no longer make the monthly payments due on the loan.  This amount totals $174,938.94.  Defendant concedes that if Petitioners are determined to be victims under the MVRA, they are entitled to these monies.  Tr. 24:2-6; id. at 85.  Accordingly, I award Petitioners $174,938.94.

5. Second, the Government contends that Petitioners are entitled to $94,545.58 as reimbursement to Glikin for past-due cigarette stamping bonds.  During the course of the bank fraud scheme, Defendant submitted a Glikin check to the State of Pennsylvania for

---

[4] See e.g., In re Stewart, 552 F.3d 1285 (11th Cir. 2008) (mortgage borrowers were CVRA victims of bank fraud conspiracy); U.S. v. Phillips, No.3:08CV51TSL–FKB, 2011 WL 2457863, *10 (S.D.Miss. Jun. 16, 2011) (awarding restitution to closing attorney who relied on fraudulent mortgage cancellation executed in the course of a mortgage fraud scheme against a bank and was subjected to malpractice claim as a result); id. at *10-11 (awarding restitution to title insurance company that paid title insurance claim to defrauded mortgage holder).

cigarette stamping bonds. That check was returned for insufficient funds. Because Petitioners are guarantors on the bonds, they are personally liable for the amount due on the bonds. Petitioners have submitted a letter from a lawyer indicating that the total amount due is $94,545.58. See Pet. Jan. 19, 2011 Submission, Tab 20. Defendant does not challenge the amount due on the bonds, but argues that this harm is too attenuated from the bank fraud to fall within the bounds of the MVRA. In making this argument, Defendant too narrowly construes his offense of conviction. He pled to a bank fraud involving three distinct aspects: the Provident Bank loan, check kiting, and depositing worthless checks. See Plea Agreement at 1 (stating that Defendant pleads to bank fraud count as described in the Information); Information at 2-6. This latter aspect consisted of Defendant depositing those checks in order to utilize the instant credits created by the deposits to issue payments to third parties that would ultimately be returned for insufficient funds. Glikin's check to the State of Pennsylvania for cigarette stamping bonds was likewise returned for insufficient funds. Therefore, under the preponderance of the evidence standard applicable to restitution determinations, see United States v. Vitillo, 490 F.3d 314, 330 (3d Cir. 2007), I conclude that the Government has sufficiently demonstrated Petitioners' entitlement to the bond funds. Accordingly, I award Petitioners $94,545.58.

6. Third, the Government argues that Petitioners are entitled to restitution for Defendant's diversion of some of the Provident Bank loan monies to his side businesses. Defendant argues that his diversion to one of his businesses, ATM Center, was not actually a diversion but was a repayment of a loan that the ATM Center had previously made to Glikin. In support of this argument, Defendant claimed at the restitution hearing that he had previously

7

      deposited $115,000 in ATM Center's cash in Glikin's account. The Court ordered Provident Bank to submit copies of the relevant Glikin's bank account statements in order to determine whether there is support for Defendant's claim. After several months, the statements were received and the Government forwarded copies to the Court. Having reviewed the statements, and the Government's submission, it appears that only $85,000 in cash was deposited into certain of Glikin's accounts. Moreover, the statements do not (and perhaps can not) confirm whether the cash came from ATM Center. Accordingly, because Defendant's claim that $115,000 from ATM Center is not borne out by the record, I reject his argument that the $115,000 does not constitute diverted proceeds.

7. Defendant further argues that granting Petitioners restitution for all the diverted proceeds would constitute impermissible "double-dipping." Tr. 89-90. His "double-dipping" logic is as follows: (a) the monies diverted to Defendant's side business were from the Provident Bank loan proceeds; (b) Provident Bank and Petitioners have already been awarded restitution on those proceeds; thus (c) to award the Petitioners the monies he diverted would amount to twice awarding either Provident Bank or Petitioners the same monies in restitution.

8. While Defendant's double-dipping argument has facial appeal, I disagree that awarding the diverted proceeds constitutes some sort of double recovery. Lurking beneath Defendant's argument is the presumption that the Court may not award a restitution amount greater than the amount of the Provident Bank loan. This is incorrect. For one, the MVRA does not limit restitution awards to amounts charged in an Information or Indictment. Rather, 18 U.S.C. § 3664(f)(1)(A) provides that restitution shall be awarded "for the full amount of each

8

victim's losses," id., and it is "the court [that] determine[s] the amount of loss pursuant to 18 U.S.C. § 3664(f)(1)(A)." U.S. v. Leahy, 438 F.3d 328, 337 (3d Cir. 2006).[5] See also U.S. v. Tsosie, 639 F.3d 1213, 1219 (9th Cir. 2011) (noting that there is no "statutory limit" and that restitution requests "may, as here, depend on a request or submission by a third party.").

9. Moreover, Defendant has not pointed to any language in the plea agreement, plea colloquy, Information, sentencing hearing transcript or any other document placing a monetary cap on the total amount that may be awarded as restitution in this case that would bind the Court. See 18 U.S.C. § 3663(a)(3) ("The court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement."). To the contrary, the plea agreement here places no limit on the amount of restitution that may be awarded and leaves determination of the proper amount to the sentencing judge. See Plea Agreement at 2-3.

10. In this connection, to the extent that Defendant argues that more than one victim can not receive restitution for losses arising out of a sole fraudulent transaction, that argument is also incorrect. Cf. U.S. v. Zander, 319 Fed.Appx. 146, 149 (3d Cir. 2009) ("Where the victims' collective losses exceed the defendant's ill-gotten gains, the amount of restitution will likewise exceed the amount of disgorgement."). It is true in calculating the amount of loss of loan proceeds for purposes of restitution, there must be a reduction for "the value of any part of the property that is returned." U.S. v. Deer, No.3:08CV89TSL–FKB, 2011 WL

---

[5] As the Third Circuit recently noted in U.S. v. Bryant, "[t]he MVRA requires restitution be ordered for the 'full amount' of each victim's loss." 655 F.3d 232, 254 (3d Cir. 2011) (citing 18 U.S.C. § 3663(f)(1)(A)). And, "[t]he proper amount of restitution is the amount wrongfully taken by the defendant." Id. (citing United States v. Sapoznik, 161 F.3d 1117, 1121 (7th Cir. 1998)).

2532462, * 5 (S.D.Miss. 2011) (citing 18 U.S.C. § 3663A(a)(3)(b)).  But that rule applies to a single victim who has already recovered from the Defendant a portion of his loss.  See 18 U.S.C. § 3663A(a)(3)(b)(iii); e.g., United States v. Campbell, 106 F.3d 64, 69 (5th Cir. 1997) (holding that bank which loaned defendant $90,000 was not entitled to restitution where bank had previously received $123,917.82 from sale of collateral which had been returned by defendant); cf. U.S. v. Quillen, 335 F.3d 219, 226 (3d Cir. 2003) (holding that "clean-up or repair costs may be ordered under the MVRA, provided the defendant is not required to compensate the victim twice for the same loss").  Here, that Defendant is required to pay restitution to Provident Bank for the loan monies does not absolve him of paying Petitioners for the loan monies that he diverted from Glikin and that would have otherwise been available for Glikin's proper use while the Provident Bank loan was still in good standing.  For these reasons, I reject Defendant's double-dipping argument.

11. Defendant does not otherwise rebut the $259,351.71 amount that the Government proposes and the Court finds that the $259,351.71 is supported by documentary evidence submitted by Petitioners.  Furthermore, and in addition to the $259,351.71, the Government supports Petitioners' request for $7,000 in legal fees that Gliken paid for a settlement of a claim against ATM Center.  The Court agrees that this too is a diversion of monies for which restitution is appropriate.  Accordingly, the Court awards to the Petitioners $266,351.71 for diversions of the Provident Bank loan proceeds.

12. In addition to the restitution amounts requested by the Government, Petitioners seek restitution for further categories of conduct.  The first category is for monies Defendant diverted from Glikin to his side businesses before committing the Provident Bank loan fraud.

10

> The Provident Bank loan was fraudulently obtained in March of 2008, and Petitioners argue that they are entitled to monies from diversions that took place as early as 2005—the beginning date of the scheme as set forth in the Information. As noted, victims are entitled to restitution only for conduct closely related to the offense to which the Defendant pled. See Fallon, 470 F.3d at 548. While the Court appreciates that the bank fraud scheme references conduct that took place beginning in 2005, the only aspect of the fraud relating to that time frame is the check kiting scheme. Because the pre-2008 diversions do not relate to the check kiting aspect of the fraud, the Court concludes that Petitioners are not entitled to restitution of the pre-2008 diverted funds.

13. Moreover, in spending considerable time reviewing Petitioners' numerous submissions, as noted above, it is apparent that the Court would be required to resolve multiple complex factual issues in order to determine the proper restitution amount. This is a another reason why awarding restitution for the pre-2008 diversions is inappropriate under the MVRA. The sentencing guidelines note that a restitution order for the full amount of the victim's loss should not be entered where "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." U.S.S.G. § 5E1.1(b).

14. Petitioners also seek restitution for Glikin's unpaid property taxes for the year 2008. Essentially, Petitioners contend Glikin was unable to pay the property taxes because Defendant otherwise diverted Glikin's funds. In my view, however, Petitioners have not sufficiently demonstrated the nexus between the unpaid taxes and the bank fraud charge to

11

which Defendant pled. Accordingly, I will not grant restitution for the taxes.

15. Petitioners further seek restitution for their mother's, Eunice Michelson's, life insurance proceeds that Defendant fraudulently obtained by forging documents in violation of Eunice Michelson's Power of Attorney. Whether Defendant forged signatures and improperly obtained the proceeds is currently the subject of a probate suit involving Defendant and Petitioners. Given the detailed factual findings inherent in the parties' dispute, I conclude that adjudication over who is entitled to the insurance proceeds is better left to the probate court. See U.S. v. Akande, 200 F.3d 136, 141 (3d Cir. 1999) ("Congress did not want sentencing to become a forum for determination of issues better suited to civil proceedings."); U.S.S.G. § 5E1.1(b).

16. Finally, Petitioners seek restitution for the loss of their equity in Glikin. According to Petitioners, Defendant's fraudulent procurement of the Provident Bank loan led to Glikin's demise. After reviewing all of Petitioner's submissions, the Court is not satisfied that there is sufficient evidence to demonstrate that Glikin's closure was directly and promixately caused by the bank fraud scheme. Defendant obtained the Provident Bank loan in March 2008. His fraud was discovered shortly thereafter in 2009. At Petitioners' request, Provident Bank restructured the loan in June 2009, thereby significantly reducing the monthly payment obligation from over $40,000 a month to an interest-only styled payment. Shortly thereafter, Defendant was removed as CEO in October 2009, and the company ceased operations in January 2010. There appear to be numerous factors relating to Glikin's closure and the Court cannot conclude on the instant record by a preponderance of the evidence that Defendant's actions proximately caused Glikin's demise. Accordingly, the

Court will not grant Petitioners' request for restitution for their loss in equity in the company.[6]

17.  Based on the foregoing, the Court awards Petitioners a total of $535, 836.23 in restitution. An appropriate Order shall follow.

Date:   March 30, 2012

/s/ Freda L. Wolfson<br>Freda L. Wolfson, U.S.D.J.

---

[6]  The Court has focused its analysis on the restitution requests highlighted at the restitution hearing. Petitioners make several additional requests that the Court does not find closely related to the offense conduct and/or recoverable under the MVRA. For example, Petitioners request restitution for the time Leslie Michelson spent in uncovering Defendant's fraudulent conduct. Petitioners calculate this loss based on a hourly rate. However, these losses constitute consequential losses that are not covered by the MVRA. See Quillen, 335 F.3d at 222 ("We have interpreted § 3663A(b)(1) not to authorize consequential damages.") (internal quotation marks omitted); id. at 223 (affirming district court's refusal to include lost income in restitution award).